EUGENE LENTILHON and FREDERICK MARTIN *vs.* CHARLES W. VORWERCK.

As a general rule, unaffected by usage, where a bill of exchange is bought through a broker, to be paid for *on delivery*, and the seller gives the bill to the broker for delivery to the buyer, without any communication with or notice to the buyer requiring payment of the purchase money to the seller himself, and without taking any precaution against payment to the broker on delivery of the bill by him to the buyer, the law implies an authority in the broker to receive the purchase money from the buyer on delivery, and will protect the buyer in making such payment to the broker.

ERROR to Superior Court. The action was brought by the plaintiffs to recover the price of two French bills of exchange sold by them to the defendant through a broker.

The facts are substantially as follows: On the 23d May, 1839, Shultz, a bill broker, called at the store of plaintiffs and inquired if they had some exchange on Paris for sale, and was answered that they had. About an hour afterwards he again called and asked them to draw upon Paris the following bills, one of 2,000 francs and another of 3,000, to the order of *C. W. Vorwerck*, payable sixty days after sight, on Pontales & Co., Havre, payable in Paris. The two bills were sold at francs 5.15, making in our currency $970.87.

They were drawn accordingly, and laid by in the office. A young man from Shultz's office the same evening, or the morning of the 24th, called and asked for Vorwerck's bills, and they were delivered to him.

The bills were charged on the books to Vorwerck, to whose order they were made payable, and on the 25th the plaintiffs sent the bill of sale to Shultz's office for the money and was told that he was not in, that they must call again. In about an hour they sent again and received the same answer. They then sent to Vorwerck and presented him with the account, who refused, saying he had paid Shultz, the broker.

In point of fact, the defendant had paid the money to the

broker on the 24th, when he received from him the two bills of exchange. Shultz died on the morning of the 25th, insolvent.

No communication, whatever, passed between the plaintiffs and the defendant in respect to the sale of the bills of exchange, until the account was presented for payment on the 25th, and refused as aforesaid.

A good deal of evidence was given on the trial concerning the usage of dealers in exchange in the city of New York; but as no point is made on it, it need not be stated, nor the charge of the court below in respect to it.

The court charged, among other things, and which is the matter complained of, that as a general rule, unaffected by usage, where a bill is sold through the agency of a broker, to be paid for on delivery, and the broker is intrusted with the bill by the seller for the purpose of its delivery to the buyer, to consummate the sale, and no communication is had by the seller with the buyer, nor any instructions or notice given to him, requiring payment of the purchase money to be made to the seller himself, nor any precaution taken against payment to the broker on the delivery of the bill by him to the buyer, the law will imply authority in the broker to receive the purchase money from the buyer on delivery of the bill to him, and will protect the buyer in paying the same to the broker from whom he receives the bill.

*By the Court*, NELSON, Ch. J. The question is, whether the payment of the bills by the defendant Shultz, the broker, under the circumstances of this case, has released him from all liability to the plaintiffs.

Shultz was employed by the defendant to purchase the exchange, in the usual way; and for this purpose, and while employed in the business, must be regarded as his agent, exclusively. And as payment by a vendee to his own agent can not operate in discharge of the demand of the seller until the money has reached him, which it has not in this case, it is quite clear there has been no payment unless something has occurred between the parties to take it out of the general course of dealing in these matters.

There are many cases running through the books, where the vendee has been protected in making payments to his purchasing agent, founded upon the special facts and circumstances of the case.

A familiar one is, where the seller has taken the personal security of the agent, and furnished him with evidence of the fact; if, after this, the principal pays his agent, or deals with him in confidence that the goods were purchased on his sole credit, he will not be made liable, though the agent should subsequently fail.

So, if the seller has suffered the day of payment for the goods to pass by without demanding payment, and has thereby induced the principal to suppose that credit was exclusively given to the agent, and if, upon the faith of that, he had paid over the amount to the agent, or settled it in account with him, the principal would be discharged. (*Kymer* v. *Suwercropp*, 1 Campb., 109; Payley on Ag., 246; Smith on Merc. L., 66; Story on Ag., 458.)

The case of *Horsfall* v. *Fauntleroy*, 10 B. & Cr., 755, may be cited in this connection. That was an action to recover the price of a lot of ivory sold at auction in Liverpool to the brokers of the defendant, who resided in London.

The conditions of sale had been published, which were, "Payment to be made on delivery of bills of parcels, by good bills on London to the satisfaction of seller," &c. One of the catalogues was forwarded to the defendant by his brokers, who were employed to make the purchase. But before the sale began, a verbal alteration was announced in the payments, namely, "Payments by known buyers, the usual credit of two and two months.         .

The brokers bought without disclosing their principal; and were put down as "known buyers," on a credit of two and two months; and in a few days after they had forwarded an account of the purchase to their principal in London, they drew upon him for the amount at four months, which was accepted. Within two months after the sale the brokers failed; and the plaintiff, discovering that the purchase was made for the defendant, demanded payment of him, and on refusal, brought his action.

The court said the plaintiff, by circulating a catalogue with certain conditions of sale, a copy of which had been transmitted to the defendant, naturally led him to suppose that his brokers could not have obtained the ivory without giving good bills on London; and that, therefore, he might properly accept the bill drawn upon him by them, for the amount; and to hold that the acceptance and payment of that bill did not exonerate the defendant, would be exceedingly hard and unjust, as he had fallen into the difficulty from being misled by the·document put forth by the plaintiff himself.

Now, the sale of the exchange in this case, the usage of trade being out of the question, as it certainly is from the direction the cause took at the trial, was for cash on delivery; and it seems to me we can not avoid seeing that the defendant was led into the payment to the agent on account of the neglect of the sellers, in permitting the bills to pass out of their hands without having first exacted the price.

Granting Vorwerck must have known, as he undoubtedly did, that the bills had been sold by the plaintiff to his agent; and that he was therefore primarily responsible to them for the purchase; the same information also advised him of the terms and conditions of the sale, to wit, cash on delivery; and the very fact of the agent having taken such delivery, the bills being in his possession and under his control, naturally enough induced the vendee, in the absence of any communication from the sellers, to suppose and believe that the agent had made an advance of the money, or that they had taken his security for the same.

It was strongly urged on the argument, that the plaintiffs had a right to presume the vendee had sent for the bills when the clerk of Shultz called for the delivery of them, and that they really supposed and believed they were in effect delivering them to him. I can not think they were justified in any such supposition. Bearing in mind the terms of the sale, the fact that the purchase money was not ready to be paid, when the bills were called for, should have satisfied the sellers that it was not the act of the vendee

They should, therefore, have withheld the bills till the money was paid, or if they chose to deliver them to the agent without intending to rely on his credit, but still look to the principal, they should have immediately communicated with him, so as to have put him on his guard against settling with the broker. Having failed to do this, they enabled him to commit the fraud, and between two innocent sufferers, the one most in fault should bear the loss.

I am of opinion, therefore, that the judgment of the court below be affirmed.

Judgment affirmed.